UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2018

Miguel Elias Sanchez Gallego et al.,

Plaintiffs,

—v—

Adyar Ananda Bhavean Corp., et al.,

Defendants.

16-CV-4631 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs Miguel Elias Sanchez Gallego and Raymundo Vazquez Angel brought this action against their former employer, the Indian restaurant Adyar Ananda Bhavan, which is owned and operated by corporate Defendant Adyar Ananda Bhavan Corp. ("Restaurant Defendant") and managed and supervised by individual Defendant Anitha Gounder ("Owner Defendant"), who owns the corporation, with assistance from Defendant Suthan Gounder. Plaintiffs bring claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq.*, alleging that Defendants (1) failed to pay Plaintiffs the minimum wage; (2) failed to pay Plaintiffs for all hours worked; (3) failed to pay Plaintiffs time-and-a-half overtime compensation for hours worked in excess of forty hours per week; (4) failed to keep adequate records under New York Labor Law, including furnishing to Plaintiffs a statement of hours worked, hourly rate, gross wages, deductions, and net wages; (5) failed to pay Plaintiffs their spread-of-hours payments; and (6) improperly withheld portions of Plaintiffs' tips.

The Court held a bench trial on November 20, 2017, and now issues its findings of fact

1

and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. The Court concludes, after carefully considering the evidence before it, the parties' written submissions, the arguments of counsel, and the controlling law on the issues presented, that Plaintiffs have met their burden of proof with respect to their spread of hours claim, their wage and notice statements claim, and some aspects of their claim for unpaid wages, against Restaurant Defendant and Owner Defendant only. Plaintiffs have not met their burden of proof with respect to the remaining claims with the exception of the overtime claim, for which the Court requires supplemental briefing. The Court therefore reserves judgment pending supplemental briefing on the overtime claim, the damages calculation, prejudgment interest, and attorneys' fees and costs.

## I. BACKGROUND

Plaintiffs filed their complaint in this action on June 17, 2016. Dkt. No. 1. The corporate and individual defendants answered the complaint in separate submissions on July 11, 2016. Dkt. Nos. 11, 12. The Court held an initial pretrial conference on October 28, 2016 and issued a case management plan in accordance with the parties' presentations at that conference. Dkt. No. 17. Fact discovery proceeded through March 31, 2017. *See* Dkt. No. 26. After settlement negotiations were unsuccessful, *see* Dkt. No. 27, the parties proceeded to trial.

The Court held a one-day bench trial on November 20, 2017 in accordance with its Individual Practices in Civil Cases for non-jury proceedings. The Court heard live testimony from Plaintiffs Raymundo Vazquez Angel and Miguel Elias Sanchez Gallego and Defendants Anitha Gounder and Suthan Gounder. *See generally* Dkt. No. 39, Tr. of November 20, 2017 trial. Defendants submitted affidavits from Ms. Gounder and Mr. Gounder, Def. Exs. E & F, as well as work records kept by Defendants for Mr. Angel and Mr. Gallego. Def. Exs. A, B, and C.

Plaintiffs submitted declarations from Mr. Angel and Mr. Gallego. Trial Declaration of Miguel Elias Sanchez Gallego ("Gallego Decl."); Trial Declaration of Raymundo Vazquez Angel ("Angel Decl.").

After the trial, the parties submitted their proposed conclusions of fact and conclusions of law. *See* Dkt. No. 38, Plaintiffs' Proposed Findings of Fact ("Pl. FOF") and Conclusions of Law ("Pl. COL"); Dkt. No. 41, Defendants' Proposed Findings of Fact ("Def. FOF") and Conclusions of Law ("Def. COL").

## II.    FINDINGS OF FACT[1]

The following section constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1). These Findings of Fact are drawn from witness testimony submitted in the form of affidavits, witness testimony at trial, and the parties' trial exhibits.

### A.    Credibility

As a threshold matter, the Court found that much of the Plaintiffs' testimony and declarations were not credible.

With respect to Plaintiff Raymundo Vazquez Angel, his testimony contained numerous contradictions about the date he began work, his weekly salary, and how much he was paid in tips. Mr. Angel initially testified that he started working at the restaurant on July 30, 2014, Tr. 6–7, but then indicated he was not entirely sure, Tr. at 14, before then conceding that his first week was the week of August 11, 2014, Tr. at 18–20. Similarly, Mr. Angel stated that his starting weekly salary was $300, Tr. at 18–19, then told the Court that he had received a $325 weekly salary that week, Tr. at 23. Mr. Angel stated categorically in his declaration and testimony that he never received more than $50 in tips, Angel Decl. ¶ 27; Tr. at 37–38, but then

---

[1] To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

admitted that on some dates he was given $70 or $80 in tips, Tr. at 38-39. More generally, Mr. Angel consistently vacillated between certainty and uncertainty about how much he actually received in tips. Tr. at 22, 25–27, 30–39, 49–51. However, the Court did find Mr. Angel credible in his responses to the Court's questioning about how long his midday breaks would last. Tr. at 52–54. Based on his testimony and the Court's assessment of his demeanor, the Court finds that Mr. Angel was not credible as to most of the matters in dispute, with the exception of how long his midday breaks lasted.

Plaintiff Miguel Elias Sanchez Gallego's testimony was also inconsistent and at times implausible. Mr. Gallego stated that the tip amounts in Defendants' records mostly appeared to him to correspond to the amount that he was paid, Tr. at 76–78, though he then said they were not, but with little specificity, Tr. at 78–81, before again saying that they seemed right, Tr. at 86. Mr. Gallego's testimony about what information was contained on receipts for internet orders, Tr. at 90–91, was also inconsistent with his declaration, Gallego Decl. ¶ 23, as well as Mr. Angel's testimony, Tr. at 52. Finally, the Court did not find Mr. Gallego's testimony that his signature had been forged by his employer to be credible. Tr. at 81–85. Based on the inconsistencies in his testimony and the Court's assessment of his demeanor, the Court finds that Mr. Gallego's testimony was not credible as to most of the matters in dispute, with the exception of his declaration of how long his midday breaks lasted. Gallego Decl. ¶¶ 11–13.

As to Owner Defendant and Defendant Suthan Gounder, the Court finds their testimony at trial to be credible. The Court also finds that Defendants' contemporaneously-kept records, Def. Exs. A, B, and C, are generally reliable. Defendants' records include Plaintiffs' signatures, which Plaintiffs—with a few exceptions—recognize as theirs. Tr. at 12, 77, 83. The recorded times that the Plaintiffs began work are also corroborated by Owner Defendant's credible

testimony. Tr. at 95–111. Mr. Angel eventually acknowledged that the start date and initial weekly wage given in the records were also accurate. Tr. at 18–20, 23. And Mr. Gallego also at times admitted that most of the information regarding tips seemed correct to him. Tr. at 76–78, 86. While both Mr. Angel and Mr. Gallego testified that they had been required to sign the records sheet before certain information had been filled in, their testimony on this issue was not always consistent. Tr. at 27–29, 48–49, 60–61, 79, 86. Therefore, the Court generally finds that these records provide a credible account of when the Plaintiffs began working for Defendants, the times Plaintiffs arrived at work in the morning and left at night, their salaries, and how much they were paid in tips.

However, the Court does not find the records credible as to the length of the midday break that Plaintiffs were given. As noted above, Plaintiffs credibly declared and testified that they often had to work between the hours of 3:00 p.m. and 5:00 p.m. Tr. 52–54; Gallego Decl., Pl. Ex. Tk ¶¶ 11–13; Angel Decl., Pl. Ex. ¶¶ 13–15. The Court finds neither Owner Defendant's affidavit, Def. Ex. E ¶ 4, nor the records she kept—which simply repeat "3 to 5" as the break every single day, Def. Ex. A, B, and C—sufficiently persuasive to refute Plaintiffs' credible testimony.

With these credibility determinations in mind, the Court finds that the following facts have been established by a preponderance of the evidence.

### b. Plaintiffs

Mr. Angel was employed by Defendants from August 6, 2014, until June 8, 2016. Def. Exs. A & B. Mr. Angel's beginning salary was $325 a week. Def. Ex. A. In December 2014, Mr. Angel's weekly salary was raised to $350 a week. Def. Ex. B. In April of 2015, his salary was raised to $375 a week. *Id.* In May of 2015, his salary was raised to $400, which he received

until the end of his employment. *Id.* Mr. Angel began working each day on or around 11:30 a.m. and left work at 10:00 p.m. Def. Exs. A & B; Tr. at 96–111. On Tuesdays, Wednesdays, Thursdays, and Fridays, Mr. Angel would get a midday break of around 45 minutes. Pl. Ex. ¶¶ 13–15; Tr. 53–54. On Saturdays and Sundays he would get a break of approximately 15 minutes. Pl. Ex. ¶¶ 13–15; Tr. 53–54.

Mr. Gallego was employed by Defendants from August 14, 2015, until June 7, 2016. Def. Ex. C. Mr. Gallego's beginning salary was also $325 a week. Def. Ex. C. His salary was raised to $350 a week around September 2015. *Id.* Finally, his salary was raised in May 2016 to $400 a week until the end of his employment. *Id.* Mr. Gallego began working each day on or around 11:30 a.m. and left work at 10:00 p.m. Def. Ex. A & B; Tr. at 96–111. On Saturdays and Sundays, Mr. Gallego would receive only a 15-minute break, while on Tuesdays, Wednesdays, Thursdays, and Fridays he would receive a 45-minute break. Gallego Decl. ¶¶ 11–13.

### B. Defendants

Defendant Suthan Gounder was a full time college student who assisted his sister, Owner Defendant, at the restaurant approximately two to three days a week, depending on his schedule. Tr. at 118–21, 123. Mr. Gounder typically came to work at the restaurant when he was told to do so by his sister, Owner Defendant. Tr. at 119. Some weeks he was so busy with school that he could not make it to the restaurant. Tr. at 120. Sometimes he was present at the restaurant when his sister was not. Tr. at 119. When he was there, he would work as a waiter, Tr. at 98, as well as instruct delivery workers about when food was ready and where it should be taken, Tr. at 121. He would not reprimand workers, as he did not consider that to be his job. Tr. at 121. He occasionally went to the bank to pick up money to pay employees, Tr. at 122, but he was never involved in personally paying employees. Tr. at 122.

6

Owner Defendant ran the restaurant and was in charge of hiring employees, scheduling their days and hours, and determining their salaries. Tr. at 99; Def. Ex. D ¶¶ 2, 5. Owner Defendant had never owned a restaurant before and sought information about labor laws on the internet. Def. Ex. D ¶ 3; Tr. at 116. Nonetheless, Owner Defendant testified she was not familiar with any requirements regarding overtime pay for hours worked above 40 hours a week. Tr. at 116–17. She did not consult either an accountant or an attorney prior to this lawsuit about how much she was required to pay her employees. Tr. at 117. Owner Defendant maintained a record book in which she would enter employees' days and hours of work, their weekly base pay, and the tips they received each week. *See* Def. Exs. A, B, C, & D ¶¶ 5–6; Tr. at 93–95. Though she was not always present when employees arrived in the morning, her determinations of when employees arrived at work was based off surveillance footage. Tr. at 95–96. In addition, delivery employees were typically only allowed to enter the restaurant at 11:30 a.m. unless granted special permission. Tr. at 96–97. The restaurant would open for customers at around 12:00 p.m. Tr. at 107. In the evening, the restaurant would stop accepting new orders and seating new customers at 9:30 p.m. Tr. 95, 109–110. Starting at 9:30, the employees would begin cleaning. Tr. at 110–11. Employees would leave at 10:00p.m., and if more cleaning was required, Owner Defendant would finish it. Tr. at 110–11. The Court generally finds that the records kept by Owner Defendant accurately reflect the times Plaintiffs arrived and left, as well as base wages and tips Plaintiffs were paid. However, the records do not accurately reflect the length of the break Plaintiffs were given each day.

## III.   CONCLUSIONS OF LAW

Before addressing specific questions regarding Defendants' liability, the Court notes that the threshold requirements for bringing suit under the FLSA and NYLL in this Court have been

met. The Court has subject-matter jurisdiction over the FLSA claims under 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367 because they form part of the same case or controversy. Venue is proper in the Southern District of New York because Restaurant Defendant is a New York corporation doing business in Manhattan. 28 U.S.C. § 1391(d). Restaurant Defendant was engaged in interstate commerce within the meaning of the FLSA and thus is subject to its wage and overtime provisions.

### A.   Defendant Suthan Gounder's Liability

Plaintiffs argue that Defendant Suthan Gounder was Plaintiffs' employer, and therefore that he should be personally liable for their FLYSA and NYLL claims. *See* Pl. COL ¶ 5, 6.

FLSA defines "employ" to mean "to suffer or permit to work," 29 U.S.C. § 203(g), and defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d). The FLSA's definition of "employer" is broader than the common-law agency relationship, "in order to effectuate the remedial purposes of the act." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). Courts therefore treat "employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141–42.

To determine whether an entity or an individual is an "employer" under the FLSA or NYLL, the Second Circuit evaluates the "economic reality" of the relationship using a four-factor test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Additionally, when assessing whether an individual is an

"employer," courts look to the scope of the individual's "operational control" over the company, including "involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." *Irizarry*, 722 F.3d at 109. Satisfying these factors is "sufficient but not necessary, and the Court must consider the totality of the circumstances." *Tapia v. Blch 3rd Ave. LLC*, No. 14-CV-8529 (AJN), 2016 WL 4581341, at *8 (S.D.N.Y. Sept. 1, 2016) (quotations and citations omitted).

In the absence of guidance from the Second Circuit or the New York Court of Appeals, "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015). This Court will do the same.

The Court concludes that Defendant Suthan Gounder was not Plaintiffs' employer. For the reasons discussed above, there is no evidence that Defendant Suthan Gounder had any operational control over the Plaintiffs at the restaurant. Specifically, there is no indication that Gounder was involved in the hiring or firing of employees or in determining rates of pay.

As is clear in the record, Defendant Suthan Gounder was simply a full time college student who assisted Owner Defendant, his sister, at her restaurant approximately two to three days a week. Tr. at 118–19, 123. For example, Defendant Suthan Gounder testified credibly that whether he was at the restaurant was based in part on his exam schedule—some weeks he was so busy with school he could not even make it to the restaurant. Tr. at 120. Gounder's tasks when he was available to help consisted of instructing delivery workers about when food was ready and where it should be taken. Tr. at 121. Employee oversight was not among his responsibilities; when asked if he "ever reprimand[ed] [the restaurant workers] if they weren't doing their job fast enough," he responded: "No, that's not my job." Tr. at 121. Considering the

totality of the circumstances, these facts suggest that Defendant Suthan Gounder was not Plaintiffs' employer. Therefore, he cannot be held liable under the FLSA or NYLL.

### B. Restaurant Defendant and Owner Defendant's Liability

Whether Restaurant Defendant and Owner Defendant are the employers of Plaintiffs is determined under the same legal standard detailed above. Plaintiffs and Defendants do not dispute that Owner Defendant was the employer of Plaintiffs. *See* Def. COL ¶ 30; Pl. COL ¶ 6. Nor do they dispute that Restaurant Defendant was the employer of Plaintiffs. Accordingly, Owner Defendant and Restaurant Defendant can be held liable for Plaintiffs' FLSA and NYLL claims if Plaintiffs have otherwise met their burdens with respect to those claims.

### C. Applicable Wage and Hour Laws

As noted *supra*, Plaintiffs commenced this action under FLSA and the NYLL. The FLSA requires employers pay their employees a legally mandated minimum wage, which, during the time at issue in this case, was set at $7.25 per hour. 29 U.S.C. § 206(a)(1). Under NYLL, the New York minimum wage for delivery workers was $8.00 per hour until December 31, 2014, during part of the relevant period. NYLL § 652. On December 31, 2014, it increased to $8.75, and remained at that rate through 2015. *Id.* On December 31, 2015, it increased to $9.00, and remained at that rate through 2016. *Id.* FLSA and NYLL also have various overtime provisions. *See* 29 U.S.C. §§ 207, 213; NYLL §§ 201, *et seq.*, §§ 650 *et seq.* Under both FLSA and NYLL, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek. 29 U.S.C. § 207(2)(C); NYCRR § 146-1.4.

In addition to the minimum wage and overtime claims, Plaintiffs raise a spread of hours claim, and a wage statement and notice claim. On each day in which the beginning and end of

the workday are more than 10 hours apart, a worker is entitled to "one additional hour of pay at the basic minimum hourly rate." NYCRR § 146-1.6(a). This provision applies regardless of the employee's hourly salary. *Id.* § 146-1.6(d). In addition, under the NYLL, employers must provide employees with certain wage and hour notices and statements. NYLL § 195(1)(a); NYLL § 195(3).

### D.    Statute of Limitations

The Court also addresses whether any of Plaintiffs' claims are time-barred. Under the FLSA, the applicable statute of limitations is two years, although it is extended to three years upon a finding that the FLSA violations by an employer were willful. 29 U.S.C. § 255(a). "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quotation marks omitted). The burden is on the employee to show willfulness. *Id.* The applicable limitations period for NYLL claims is six years. NYLL § 663(3).

Here, Plaintiffs have established that Defendants acted willfully with respect to the violations the Court finds. As discussed above, Defendants' conduct suggests that at times, they exhibited a reckless disregard for the truth of the records they kept about their employees' break hours. Defendants do not address the issue of willfulness, merely asserting in a conclusory fashion that they acted in "good faith." However, "good faith" is a consideration in the analysis of the availability of liquidated damages, not in the willfulness determination. Accordingly, the FLSA statute of limitations is extended to three years for Plaintiffs' claims, and none of Plaintiffs' claims are time-barred.

### E.    Plaintiff's Claims

The Court now addresses whether Restaurant Defendant and Owner Defendant are liable for Plaintiff's FLSA and NYLL claims. The Court concludes that Restaurant Defendant and Owner Defendant are not liable as to Plaintiffs' minimum wage claim and misappropriation of gratuities claim. Restaurant Defendant and Owner Defendant are liable for Plaintiffs' spread of hours claim, wages and notice statements claim, and Plaintiffs are owed unpaid wages for hours worked during their recorded breaks. The Court also concludes that Defendants did not act in good faith with respect to recording break hours, and therefore that Plaintiffs are entitled to liquidated damages. Finally, the Court concludes that Plaintiffs may be entitled to overtime pay, but that supplemental briefing is required to reach a final disposition of this issue.

### 1.    Minimum Wage and Overtime Wages Claims

An employee-plaintiff under the FLSA bears the burden of proving that she performed work for which she was not properly compensated. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1040 (2016). "In a FLSA case, in the *absence* of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (emphasis added) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). The burden then shifts to the employer to provide evidence that will show "the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson*, 328 U.S. at 687-88). A similar standard applies to unpaid compensation claims under NYLL. *See Canelas v. World Pizza, Inc.*, No. 14 CIV. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017); NYLL § 196-a(a).

The Court concludes that Restaurant Defendant and Owner Defendant have provided

sufficient evidence that negates Plaintiffs' recollection as to when Plaintiffs began their employment, when they arrived at work each day, when they left each day, and how much they were paid. As discussed above, Defendants did this by providing accurate records of days worked, and arrival and departure times by their delivery workers. Each week, Plaintiffs signed a book maintained by Restaurant Defendant and Owner Defendant that included the days and hours worked, a weekly base pay, and tips earned and received each day. Def. FOF ¶ 7–10. According to those records, Plaintiffs were paid at least a minimum wage each week. *See* Def. COL ¶ 32.

Plaintiffs argue that the Court should instead adopt as fact Plaintiffs' recollection of their hours worked and payments received, Pl. COL ¶ 24, as they contend that Restaurant Defendant and Owner Defendant's records were not accurate. However, as discussed above, the Court does not credit Plaintiffs' vague recollections of hours worked and pay received. Accordingly, the Court finds the records in evidence controlling and largely reliable. Because the records indicate that Plaintiffs were paid the requisite minimum wage, Restaurant Defendant and Owner Defendant did not violate the FLSA and NYLL with respect to Plaintiffs' minimum wage claim.

The one portion of Plaintiffs' recollection that the Court did find credible, as discussed above, is that Plaintiffs were typically required to work during what the records indicate was a two-hour break. Because Plaintiffs were credible with respect to this issue, and Restaurant Defendant and Owner Defendant did not provide sufficient credible evidence to counter the inference drawn from the employees' evidence, the Court concludes that Plaintiffs are entitled to some unpaid wages from the time indicated as break time in the records. *See Tapia v. Blch 3rd Ave. LLC*, No. 14-CV-8529 (AJN), 2016 WL 4581341, at *5 (S.D.N.Y. Sept. 1, 2016). The Court adopts Plaintiffs' testimony in their declarations regarding the length of their breaks on

various days of the week. That is, that while the Defendants records indicate a break each day from 3:00 p.m. to 5:00 p.m., the Court finds the Plaintiffs received 15-minute breaks on Saturday and Sundays, and 45-minute breaks on Tuesdays, Wednesdays, Thursdays, and Fridays.

Even taking this additional time worked into account, however, as of this time Plaintiffs have not provided sufficient information for the Court to determine conclusively whether or not Plaintiffs are owed overtime wages, and if so, how much. A review of Defendants' records suggests there may be unpaid overtime hours, but the Court needs more information to make a conclusion on this issue. Therefore, the parties shall submit supplemental briefs explaining why—based solely on the record and this Court's findings of fact above—Plaintiffs are or are not entitled to overtime wages, and if so, how much. A supplemental briefing schedule is provided below. The Court also notes that even taking the additional hour and half of unpaid time into account, Plaintiffs were still paid the applicable minimum wage requirements under the FLSA and NYLL.

To summarize, the Court finds that Plaintiffs are not entitled to unpaid minimum wages. Plaintiffs are entitled to unpaid wages for the time worked that was erroneously recorded as break time. The extent of if, and how much Plaintiffs are owed for overtime wages must be addressed by supplemental briefing based solely on the existing trial record and the findings made in this Opinion.

### 2.     Spread of Hours Claim

Plaintiffs argue that they were improperly denied spread of hour wages. Pl. COL ¶¶ 40–41. Under NYCRR, on each day in which the beginning and end of the workday are more than 10 hours apart, a worker is entitled to "one additional hour of pay at the basic minimum hourly rate." NYCRR § 146-1.6. This provision applies regardless of the employee's hourly salary.

*Id.*; *see Tapia*, 2016 WL 4581341, at *6. As discussed, the Court found that Plaintiffs worked more than a 10 hour spread every workday, which is also confirmed by Defendants' own records. Nothing in the record suggests that Plaintiffs received spread of hours pay. Accordingly, Plaintiffs are entitled to spread of hours damages.

### 3. Wage and Notice Statements

Plaintiffs also seek to recover two forms of statutory damages under New York law. Pl. COL ¶¶ 42–50. During the relevant period, NYLL § 195(1)(a) required employers to provide employees with notices informing them of their rate of pay at the time of hiring and on or before February 1 of each subsequent year of employment. A second provision, NYLL § 195(3), required employers to provide employees with a wage statement with each payment of wages. There is nothing in the record that suggests Defendants provided Plaintiffs with these required statements. *See* Tr. 112:23–113:23. Accordingly, Plaintiffs are entitled to damages on these claims.

### 4. Misappropriation of Gratuities

Plaintiffs argue that they are entitled to misappropriated gratuities. Pl. COL ¶¶ 51–54. NYLL forbids employers from retaining gratuities received by or on behalf of employees. NYLL § 196-d. Therefore, employees can "recover gratuities that were unlawfully retained." *See Romero v. Anjdev Enterprises, Inc.*, No. 14-cv-457 (AT), 2017 WL 548216, at *11 (S.D.N.Y. Feb. 10, 2017). However, as discussed, the Court declines to credit Plaintiffs' testimony regarding misappropriated gratuities. Therefore, Plaintiffs are not entitled to damages on this claim.

### 5. Good Faith

Plaintiffs seek to recover liquidated damages. The FLSA provides for liquidated damages equal to the unpaid wages and overtime recovered. 29 U.S.C. § 216(b). An employer may avoid liquidated damages if she can show that she acted "in good faith and that [she] had reasonable grounds for believing that [her] act or omission was not a violation of the" FLSA. *Id.* § 260. The burden is on the employer to demonstrate good faith. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). To meet this burden, an employer must have taken active steps to ascertain and comply with the FLSA's requirements. The Second Circuit has characterized the employer's burden as "a difficult one," and emphasized that "double damages are the norm and single damages the exception." *Id.* NYLL provides for liquidated damages on identical terms to the FLSA. NYLL §§ 198(1-a), 663(1); *see also Romero*, 2017 WL 548216, at *11 ("Courts treat the federal and state good-faith standards as analogous.").

As discussed above, the record contains little evidence of good faith, and Defendants arguments are unpersuasive. Rather, Defendants have merely stated in a conclusory fashion that the Defendants "acted in good faith" without providing any citation to the record. Def. COL ¶ 33. The Court will therefore award liquidated damages.

Plaintiffs argue that they are entitled to recover overlapping liquidated damages under the two statutes, essentially tripling their recovery. Pl. COL ¶ 37. The Second Circuit has interpreted the liquidated damages provision under NYLL as satisfied by a similar award under the FLSA. *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) (summary order). The Court agrees with the reasoning in *Chowdhury,* and joins other courts that have held that liquidated damages under the FLSA and NYLL do not accrue jointly. *See Andrade v. 168 First Ave Rest. Ltd.*, No. 14-CV-8268 (JPO) (AJP), 2016 WL 3141567, at *6–7

(S.D.N.Y. June 3, 2016), *report and recommendation adopted by* 2016 WL 3948101 (S.D.N.Y. July 19, 2016) ("The 'prevailing view' now is that double liquidated damages should not be awarded."); *id.* (collecting cases). Accordingly, Plaintiffs are entitled to one set of liquidated damages.

## IV.   DAMAGES

As discussed above, the Court requires additional briefing on Plaintiffs' overtime claim. Whether Plaintiffs are entitled to overtime wages will impact the amount of damages Plaintiffs are owed. Therefore, the Court will issue a separate opinion calculating damages after it has had an opportunity to review the supplemental briefs on the overtime wages.

Additionally, Plaintiffs shall submit any appropriate request for fees and costs with their supplemental brief. Plaintiffs should also address any claim for prejudgment interest on the surviving claims.

## V.   CONCLUSION

For the reasons provided above, the Court concludes that Defendant Suthan Gounder was not Plaintiffs' employer and therefore he has no liability. Further, the Court concludes that Restaurant Defendant and Owner Defendant have violated the FLSA and NYLL only with respect to Plaintiffs' spread of hours claim, wage and notice statements claim, and unpaid wages for hours worked during Plaintiffs' recorded breaks. The Court reserves judgment on the overtime claim. Plaintiffs shall submit a supplemental brief in accordance with this Opinion & Order on or before October 15, 2018. Defendants' response shall be due on or before October 29, 2018. Plaintiffs reply shall be due on or before November 5, 2018.

SO ORDERED.

Dated: September 20 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge